**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN S. MILLER,**

                              **Plaintiff,**                    **7:11-cv-631**
                                                                **(GLS)**

                    **v.**

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

                              **Defendant.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinksy Law Group              HOWARD D. OLINSKY, ESQ.
300 S. State Street
5th Fl., Suite 520
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN        JEREMY A. LINDEN
United States Attorney           Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Mary Ann Sloan
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff John S. Miller challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI) and seeks judicial review under 42 U.S.C. § 1383(c)(3).  (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Miller's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

### II. Background

On September 5, 2006, Miller filed an application for SSI under the Social Security Act ("the Act"), alleging disability since December 16, 2005. (*See* Tr.[1] at 13.)  After his application was denied, Miller requested a hearing before an Administrative Law Judge (ALJ), which was held on February 10, 2009.  (*See id.* at 13, 22-56.)  On June 3, 2009, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review.  (*See id.* at 1-5, 10-21.) Miller

---

[1] Page references preceded by "Tr." are to the Administrative Transcript.  (*See* Dkt. No. 8.)

commenced the present action by filing a complaint on June 7, 2011,

seeking review of the Commissioner's determination.  (*See* Compl. ¶¶ 1-7.)

The Commissioner filed an answer and a certified copy of the

administrative transcript.  (*See* Dkt. Nos. 7, 8.)  Each party, seeking

judgment on the pleadings, filed a brief.  (*See* Dkt. Nos. 11, 14.)

## III.  <u>Contentions</u>

Miller contends that the Commissioner's decision was the product of

the application of improper legal standards and is unsupported by

substantial evidence.  (*See generally* Dkt. No. 11.)  Specifically, Miller

claims the ALJ: (1) erred in finding that he knowingly and voluntarily waived

his right to legal representation; (2) erred by failing to develop the record

with regard to his limited intellectual capacity; (3) erred in determining his

Residual Functional Capacity (RFC); (4) did not apply the appropriate legal

standards in evaluating his credibility; and (5) erred at step five.  (*See* Dkt.

No. 11 at 1, 13-15, 17-21.)  Additionally, Miller claims that the Appeals

Council erred by failing to remand due to his severe depressive disorder.

(*See id.* at 15-17.)  The Commissioner counters that the appropriate legal

standards were applied and substantial evidence supports the ALJ's

decision.  (*See generally* Dkt. No. 14.)

## IV.  **Facts**

The evidence in this case is undisputed and the court adopts the parties' factual recitations.  (*See* Dkt. No. 11 at 2-11; Dkt. No. 14 at 1-7.)

## V.  **Standard of Review**

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 1383(c)(3) is well established and will not be repeated here. For a full discussion of the standard and the five-step process used by the Commissioner in evaluating whether a claimant is disabled under the Act, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  **Discussion**

### A.    **Waiver of Right to Legal Representation**

Miller first avers that the ALJ erred in finding that he knowingly and voluntarily waived his right to legal representation,  (*see* Dkt. No. 11 at 13-14), because he had "limited intellectual capacity," which prevented him from doing so, (*id.* at 13).  The court disagrees.

Although a claimant does not have a constitutional right to counsel at a social security disability hearing, "[the claimant] does have a statutory

4

and regulatory right to be represented should [he] choose to obtain counsel." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); 42 U.S.C. §1383(d)(2)(D); *accord* 20 C.F.R. § 416.1506.  If properly informed of this right, a claimant may waive it.  *See Lamay*, 562 F.3d at 507.

Relevantly, the regulations state that, when notifying a claimant of an adverse determination, the Commissioner must "notify [the] claimant in writing" of (1) his "options for obtaining attorneys to represent [him]" at his hearing, and (2) "the availability to qualifying claimants of legal services organizations which provide legal services free of charge."  42 U.S.C. § 1383(d)(2)(D); *accord* 20 C.F.R. § 416.1506; *see Lamay*, 562 F.3d at 507. Additionally, at the hearing itself, "the ALJ must ensure that the claimant is aware of [his] right [to counsel]."  *Lamay*, 562 F.3d at 507 (internal quotation marks and citation omitted).

Here, Miller was informed of his right, in writing, on three separate occasions.  (*See* Tr. at 60, 70-76, 79.)  And, though Miller stated that he had difficulty with reading and math in school, and had dyslexia, (*see id.* at 48), Miller also testified that he could "read really well," (*id.* at 30). Moreover, the transcript evidences several occasions in which Miller

stated he could: read and understand English, (*see id.* at 109); follow spoken and written instructions, (*see ia.* at 125); attend to and appropriately respond to all questions and requests, (*see id.* at 228); and read daily, (*see id.* at 231).

Indeed, Miller acknowledged at the hearing that he understood he had a right to representation, and that the ALJ would adjourn the hearing if he sought to obtain representation. (*See id.* at 24-25.) There is no indication in the record that Miller was confused, or did not understand what the right to counsel entailed. Rather, the ALJ noted that Miller previously had an attorney, who withdrew his representation. (*See id.* at 24, 63, 69.) As such, the court concludes that Miller was aware he could obtain representation to assist him with the hearing, and made a voluntary choice to forego such representation.

## B.   Development of the Record

Miller next contends that the ALJ failed to fully develop the administrative record. (*See* Dkt. No. 11 at 14-15.) Specifically, he alleges that the ALJ erred by failing to order a consultative intelligence examination with regard to his intellectual capacity. (*See id.* at 15.) The Commissioner counters that the record is complete and fully developed

under the regulations.  (*See* Dkt. No. 14 at 12-13.)  The court agrees with

the Commissioner.

While Miller is correct in stating that the ALJ has an affirmative

obligation to develop the administrative record, "it is also true that this

obligation is not limitless."  *Guile v. Barnhart*; No. 5:07-cv-259, 2010 WL

2516586, at *3 (N.D.N.Y. June 14, 2010).  "Indeed, where the evidence

received by the ALJ is consistent and sufficient to determine whether a

claimant is disabled, further development of the record is unnecessary,

and the ALJ may make [his] determination or decision based on that

evidence."  *Id.*; *see* 20 C.F.R. § 416.920b(a); *cf.* § 416.920b(b) (providing

that even if the record evidence is inconsistent, the ALJ will weigh the

relevant evidence and decide whether a disability determination can be

made concerning a disability insurance benefit claim).  As such, where no

"obvious gaps" exist in the administrative record, the ALJ is under no

evidentiary obligation to seek additional information.  *Rosa v. Callahan*,

168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation

omitted).

Here, in her assessment of Miller, consultative psychologist Jeanne

Shapiro, Ph.D., found that Miller had no significant psychiatric problems,

but noted that mild mental retardation had not been ruled out.  (*See* Tr. at 17, 229.)  Nonetheless, Dr. Shapiro opined that Miller was capable of attending to, and appropriately responding to, all questions and requests; performing simple and probably some complex tasks with supervision; independently maintaining attention and concentration for tasks; regularly attending to a routine and maintaining a schedule; learning new tasks; making appropriate decisions; relating to and interacting appropriately with others; and dealing with stress.  (*See id.* at 17, 228-29.)  State agency psychiatrist Dr. Apacible corroborated Dr. Shapiro's findings and opined that Miller had no severe mental impairments, including no mental retardation.[2]  (*See id.* at 17, 234.)

Based on these reports, the court concurs with the Commissioner that further development of the record was unnecessary.  The ALJ had before him substantial, consistent evidence to gauge Miller's mental limitations and there were no obvious gaps in the record.  In particular, the clinical findings of Drs. Shapiro and Apacible both support the conclusion that Miller is not significantly impaired.

---

[2] Additionally, Miller was employed for extended periods prior to his application for SSI.  (*See id.* at 31-33, 91, 96.)

As to Miller's claim that the ALJ has a "heightened duty" to develop the record when a claimant proceeds *pro se*, Miller is also correct. *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (internal quotation marks and citations omitted).  However, the ALJ fulfilled that duty by conducting an extensive hearing, (*see id.* at 24-56), during which he permitted Miller to discuss any issues he felt were important, (*see id.* at 49), questioned Miller as to whether there was any additional medical evidence to collect, requested such evidence, and added over 100 pages to the record, (*see id.* 49-55, 262-370).  Thus, Miller's argument that the ALJ did not fully develop the record, fails.

## C.   RFC Determination

Miller next avers that the ALJ's RFC assessment is flawed because the ALJ did not fully develop the record regarding Consultative Examiner Dr. Naughten's report and implicitly adopted the opinion of a state agency disability analyst.  (*See id.* at 17-19.)  The Commissioner counters, and the court agrees, that the ALJ properly evaluated and weighed the medical evidence in determining Miller's RFC.  (*See* Dkt. No. 14 at 13-19.)

A claimant's RFC "is the most [he] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).  In assessing a claimant's RFC,

an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* § 416.945(a)(3). An ALJ's RFC determination must be supported by substantial evidence[3] in the record.  *See Frye v. Astrue*, No. 11-1585-cv, 2012 WL 2125910, at *2 (2d. Cir. June 13, 2012) (stating that, pursuant to 42 U.S.C. § 1383(c)(3), the standards set forward in 42 U.S.C. § 405(g) apply to SSI cases).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, the ALJ found that Miller has the "residual functional capacity to lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk 6 hours in an 8-hour day and sit 6 hours in an 8-hour day with occasional climbing, stooping, kneeling, crouching and crawling and frequent balancing."  (Tr. at 18.)  The ALJ also found that Miller should avoid "concentrated exposure to hazards such as machinery and heights." (*Id.*)

---

[3] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

In reaching his conclusion, the ALJ considered the August 2006 recommendation of orthopedic specialist David Van Eenenaam, M.D., that Miller temporarily not work at his job because he could not sit for prolonged periods with his back pain and radiation.  (*See id.* at 18, 208.) The ALJ also considered Dr. Naughten's medical opinions in March 2007, that Miller "may need to be restricted from activities requiring mild to greater exertion with moderate limitation for walking and climbing stairs," that Miller "should be able to carry and handle objects with moderate degree of weight on an occasional basis," and had no limitation for sitting or standing.  (*Id.* at 18, 233.)  Additionally, the ALJ considered a state agency disability analyst's opinion from April 2007, which opined that Miller "could lift or carry [twenty] pounds occasionally and [ten] pounds frequently, stand or walk about [six] hours in an [eight]-hour day and sit about [six] hours in an [eight]-hour day and should avoid concentrated exposure to hazards." (*See id.* at 18, 249-250.) The ALJ also considered notes from neurology associate Gabriela Canal, RPA-C, which indicated that in May 2008, the claimant's physical findings, which included an MRI of both the cervical spine and lumbar spine, were out of proportion with his complaints of pain. (*See id.* at 18, 266).

Moreover, in an effort to develop a more complete record, the ALJ requested that treating sources Drs. VanDeWall and Baird complete a Medical Source Statement of Ability to do Work-Related Activities for Miller; however, both declined to do so.  (*See id.* at 19, 272-73, 346.) Nonetheless, Drs. VanDeWall and Baird's treatment notes remained consistent with Dr. Naughten's relatively benign findings.  (*See id.* at 287, 280, 282, 287, 290, 358-61.)  As such, the ALJ's decision to afford "considerable weight" to Dr. Naughten's opinion was correct since Naughten's opinion is generally consistent with the record as a whole. *See* 20 C.F.R. § 416.927(c)(4) (explaining that the more consistent an opinion is with the record as a whole, the more weight it deserves).

Further, Miller's claim that the ALJ "cherry-picked" findings from Dr. Naughten's opinion, (Dkt. No. 11 at 18), is untenable.  Rather, the ALJ's RFC assessment is completely consistent with Dr. Naughten's opinion. Comparing the two, Dr. Naughten limited Miller to carrying and handling objects with a "moderate degree of weight on an occasional basis," and the ALJ limited Miller to lifting or carrying twenty pounds "occasionally" and ten pounds frequently.  (*Compare* Tr. at 233, *with* Tr. at 18.) Additionally, Dr. Naughten opined that Miller had a "moderate" limitation

for walking and "no limitations" for sitting or standing, which is similar to the ALJ's RFC analysis that Miller could stand, walk, or sit six hours in an eight-hour day.  (*Compare id.* at 233, *with id.* at 18.)  Also, Dr. Naughten opined that Miller had a "moderate" limitation for climbing stairs, which is compatible with the RFC analysis that he was limited to "occasional climbing."[4]  (*Compare id.* at 233, *with id.* at 18.)

Finally, Miller's claim that the ALJ must have implicitly adopted the non-medical disability analyst's opinion because it "mirrors" the ALJ's RFC assessment, is also meritless.  In fact, in making his determination, the ALJ acknowledged that the disability analyst was an unacceptable medical source under the regulations and consequently stated that he was giving the opinion "little weight."  (*Id.* at 18.)

As such, the record as a whole demonstrates that the ALJ's RFC assessment is supported by substantial evidence and is thus conclusive.

---

[4] Regarding Miller's claim that the ALJ failed to fully develop the record with regard to Dr. Naughten's opinion, primarily because the ALJ did not obtain documentation regarding Miller's weight gain, that claim is also without merit.  (Dkt. No. 11 at 18.)  In actuality, the record is complete in this area and it appears that Miller did not gain this weight solely in the two weeks preceding his consultative examination with Dr. Naughten. (*See* Tr. at 165, 230-31, 233, 306, 361, 409.)

*See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990); *see also Perez*, 77 F.3d at 46.

**D.   Credibility Assessment**

Miller next objects to the ALJ's analysis of his credibility.  (*See* Dkt. No. 11 at 19-20.)  The Commissioner counters that the ALJ properly evaluated the evidence in assessing Miller's credibility.  (*See* Dkt. No. 14 at 19-21.)  Again, the court disagrees with Miller.

An ALJ must consider a claimant's subjective complaints of pain in gauging his RFC.  *See* 20 C.F.R. § 416.929(a).  However, an individual's statement as to pain or other symptoms will not alone be conclusive evidence of disability.  *See id.*  The Commissioner is obligated to evaluate all of a claimant's symptoms, "including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  *Id.*

Ultimately, "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).  Thus, "after weighing the objective medical evidence in the record, the claimant's demeanor, and

other indicia of credibility," an [ALJ] may reject the claimant's subjective allegations of pain as long as he sets forth his "reasons with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).

Here, the ALJ considered both the medical evidence and Miller's testimony concerning his activities of daily living, and highlighted the inconsistencies in Miller's testimony. (*See* Tr. at 19.) For instance, Miller testified that he could not return to work due to daily pain up his spine and into his neck, that he takes Gabapentin for pain, and that his wife bought him a cane that he uses around the house or if he has to go to the store, but failed to bring the cane to the hearing. (*See id.* at 19, 36-39.) Additionally, Miller stated that his wife does all the household chores because it is "her thing," not because he cannot do it. (*See id.* at 19, 44.) Finally, the ALJ noted that Miller claimed that he used to bike ride, golf and bowl, but now spends his day "sitting in front of the television or [lying] down on the couch," however, in June 2008, he complained of a blister on his thumb which he acquired from doing work in the garden. (*See id.* at 19; *compare id.* at 45, *with id.* at 284.)

15

On the basis of the record before it, the court discerns no error in the ALJ's determination that Miller's subjective statements were not entirely credible and did not alone establish disability.  *See* 20 C.F.R. § 416.929(a).

## E.   <u>Vocational Expert</u>

Miller next avers that the "ALJ erred by relying solely on the medical-vocational guidelines and not introducing the testimony of a vocational expert."  (Dkt. No. 11 at 21.)  Specifically, Miller argues that the ALJ is required to consult with a vocational expert where significant nonexertional impairments are present, and that Miller himself suffered from such impairments.  (*See id.*)  Conversely, the Commissioner asserts that the ALJ correctly determined that there were jobs in the national economy that Miller could perform.  (*See* Dkt. No. 14 at 21-22.)  The court agrees with the Commissioner.

The appropriateness of applying the grid guidelines, and the "necessity for expert testimony must be determined on a case-by-case basis."  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).  Indeed, the ALJ is vested with discretion regarding whether to use a vocational expert. *See* 20 C.F.R. § 416.966(e).  But "if a claimant's nonexertional

16

impairments 'significantly limit the range of work permitted by his exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments." *Bapp*, 802 F.2d at 605 (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983)).  In that case, the ALJ should consult with a vocational expert before making a determination as to disability.  *See Id.*  However, "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines."  *Id.* at 603.  Instead, exclusive reliance on the grids will only be deemed inappropriate where the non-exertional impairments *"significantly* limit the range of work permitted by his exertional limitations."  *Id.* at 605 (emphasis added) (internal quotation marks and citation omitted).

Here, the ALJ concluded that Miller's ability to perform a full range of exertional requirements of light work had been compromised by non-exertional limitations, such as an inability to ascend or descend scaffolding, poles, and ropes; an inability to crawl on hands and knees; and an inability to use his fingertips to sense the temperature or texture of an object.  (*See* Tr. at 20.)  However, the ALJ found that the non-

17

exertional limitations or restrictions "have very little or no effect on the unskilled light occupational base." (*Id.* at 20.)  Additionally, as discussed above, Miller's ability to meet the demands of unskilled work are demonstrated by ample evidence in the record.

Miller's contention that his nonexertional limitation, related to his depressive disorder, makes the ALJ's step-five finding inappropriate, is flawed.  First, the evidence on which Miller relies was provided after the ALJ rendered his decision.  (*See id.* at 10, 424-28, 430-35, 439-42.)  And more importantly, as discussed below, the Appeals Council's decision to deny review of the ALJ's decision after considering the new evidence, was appropriate.

Thus, the ALJ made the proper decision to forego consultation with a vocational expert.

## F.   **Appeals Council's Denial of Review**

Lastly, Miller contends that the Appeals Council erred by failing to remand based on psychiatric evidence submitted to it after the ALJ's decision.  (*See* Dkt. No. 11 at 15-17.)  Specifically, Miller contends that the psychiatric evidence from Dr. Kimball and social worker Perry, provided a basis to change the ALJ's decision. (*See id.*)  The Commissioner counters

that the records presented to the Appeals Council provided no basis to change the ALJ's decision.  (*See* Dkt. No. 14 at 22-25.)  The court agrees with the Commissioner.

The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 416.1476(b)(1); *accord* § 405.401(c); *see Perez*, 77 F.3d at 45.  The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 416.1470(b).  However, even if "the Appeals Council denies review after considering new evidence, the [Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Perez*, 77 F.3d at 45 (internal quotation marks and citation omitted).  Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court.  *Id.* at 45-46.

Presuming, without deciding, that the evidence relating to Miller's condition was within the relevant time period,[5] the evidence would not

---

[5] "The Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." *See* 20 C.F.R. § 416.1470(b).

have altered the Commissioner's decision because the opinions therein deserve little weight.  *See Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991).

Under the "treating physician rule," the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004).  And, if a treating physician's opinion is rendered undeserving of "controlling weight," an ALJ may nonetheless consider the following factors when determining the proper weight to afford the treating physician's opinion: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court.  20 C.F.R. § 416.927(c)(1)-(6); *see Kaminski v. Astrue*, No. 09-CV-655, 2012 WL 887468, at *6 (N.D.N.Y. Feb. 21, 2012).

Here, Dr. Kimball's assessment of Miller at Mercy is not only contradicted by substantial evidence of record, but by his own statements. On June 16, 2009, Dr. Kimball maintained that Miller had a GAF score of 48, and opined that, "depression appears to be related to his pain and physical inactivity." (*Id.* at 432, 435.) However, that same day Dr. Kimball noted that Miller showed normal grooming and hygiene, good eye contact, normal speech, full orientation, average estimated IQ, intact remote memory, lucid thought process, no hallucinations, good insight and judgment, good impulse control, and no suicidal or homicidal ideation. (*See id.* at 432-34.)

Moreover, on December 17, 2009, Dr. Kimball opined that Miller would have "poor"[6] ability to use judgment, relate to authority, deal with stress, function independently, maintain attention/concentration, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability, and understand, remember, and carry out detailed/complex instructions; and had a current GAF of 40. (*Id.* at 424-25, 428.) However, again, that same day Dr. Kimball opined that

---

[6] "Poor" means, "ability to function in this area is "seriously limited. Ability to function is less than satisfactorily maintained for periods in excess of 2 or 3 hours a day, 5 days per week." (Tr. at 424.)

Miller had normal grooming and hygiene, cooperative relation, fair eye contact, normal speech, normal expressive language, full orientation, average estimated IQ, intact remote memory, lucid thought, no delusions, fair insight and judgment, fair impulse control, and no suicidal, homicidal, or violent ideation.  (*See id.* at 426-28.)  Additionally, Dr. Kimball maintained that Miller could maintain personal appearance, follow rules, deal with the public, manage his own benefits to his own best interest, and understand, remember, and carry out simple instructions.  (*See id.* at 424-25.)

Furthermore, Dr. Kimball's opinions are also inconsistent with evidence from the relevant period, which show Miller maintaining intelligible speech, a coherent thought process and directed goal, a calm mood, intact attention and concentration; and the ability to perform simple and "probably" some complex tasks.  (*Id.* at 228-29.)

Given these inconsistencies, the court agrees with the Commissioner that Dr. Kimball's opinions were undeserving of controlling

22

weight, and thus, would not have influenced the Appeals Council to decide Miller's position differently.[7]

Finally, Perry, as a social worker, is not an acceptable medical source, as defined under the regulations; thus the evidence she provided is inconclusive in the disability determination.  *See* 20 C.F.R. § 416.913(a).  In any event, her assessment is unavailing considering on May 14, 2010, she discharged Miller from care at Mercy because he had not attended counseling since January 5, 2010.  (*See* Tr. at 430.) Moreover, Perry's opinion, rendered that same day, which indicated that Miller had a current GAF of 40 and a GAF of 48 for the past year, is equally dubious considering she had not seen Miller in months.  (*See id.* at 430-31.)

As such, the records presented to the Appeals Council provided no basis to change the ALJ's decision.

### G.   Remaining Findings and Conclusions

---

[7] Even if one were to consider the factors regarding the proper weight to afford Dr. Kimball's opinion, Dr. Kimball saw Miller only two times, six months apart.  (*See* Tr. at 424, 432.)  According to Dr. Kimball's notes, Miller has "surely" not participated in treatment "except to attend this evaluation which his lawyer set up to help his social security case." (*Id.* at 428.)

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Miller's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

July 26, 2012
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court

24